**UNITED STATES v. FORTIER et al.**

Civ. No. 745.

United States District Court
D. New Hampshire.

Feb. 24, 1950.

Dennis E. Sullivan, U. S. Atty., Concord, N. H., Robert D. Branch, Asst. U. S. Atty., Concord, N. H., for plaintiff

McLane, Davis, Carleton & Graf, Stanley M Brown, Manchester, N. H., for Fortier.

Green, Green & Romprey, Meyer Green, Manchester, N. H., for Marinos.

CONNOR, District Judge.

This is an action brought by the United States of America to enforce compliance with the Veterans' Emergency Housing Act of 1946, Public Law 388, 79th Congress, 60 Stat. 207, and regulations issued thereunder, the pertinent one being Priority Regulation 33 promulgated under Title III of the Second War Powers Act, as amended, 56 Stat. 176, 50 U.S.C.A.Appendix, § 631 et seq., and later adopted under the Veterans' Emergency Housing Act of 1946. Jurisdiction is conferred by Section 7(c) of the Veterans' Emergency Housing Act of 1946, 60 Stat. 207, 50 U.S.C.A.Appendix, § 1821 et seq., and Revised Judicial Code, 62 Stat. 869, Title 28 U.S.C.A. § 1345.

On August 21, 1946, the defendants made application for a residential construction permit under Priorities Regulation 33. The application was approved by the Federal Housing Administration, and as approved authorized the construction of two five-room houses, without garages or breezeways, and established a maximum sales price of $8,350 on each unit. Upon approval of the application, a project serial number and an HH preference rating were assigned. Construction of one house was completed in August of 1947 and the second in January of 1948. During the process of construction certain additions were made in deviation from the approved plans and specifications. The first of the two houses was sold on December 4, 1947, for the price of $12,000, and the second on November 12, 1947, the price being $12,800. It is upon these sales that the complainant alleges a violation of Section 5 of the Act, and prays that mandatory injunctions issue requiring the defendants to make restitution to the respective purchasers of the sums received in excess of the maximum sales price and for additional amounts because of alleged failure to complete construction in accordance with the specifications.

The Second War Powers Act and the Veterans' Emergency Housing Act (in part) had been repealed prior to both sales.

In considering the issues of law raised by the foregoing facts which are not in substantial dispute, there is presented at the outset the question of whether the sales were in fact violations of the Act. It is the contention of the complainant that "the repeal of the 1946 Act was accomplished according to and by virtue of Section 1(b) of the Act itself, and that it was not intended that Section 5 should be repealed."

Section 1(b) of the Veterans' Emergency Housing Act provides: "The provisions of this Act, and all regulations and orders issued thereunder, shall terminate on December 31, 1947, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the provisions of the Act are no longer necessary to deal with the existing national emergency, whichever date is the earlier."

Section 5 of the same Act states: "Notwithstanding any termination of this Act as contemplated in section 1(b) hereinabove, the provisions of this Act, and of all regulations and orders issued thereunder, shall be treated as remaining in force, as to rights or liabilities incurred or offenses committed prior to such termination date, for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense."

Section 1(a) of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 (a), is as follows: "Section 1. (a) Sections 1, 2(b) through 9, and sections 11 and 12, of Public Law 388, Seventy-ninth Congress, are hereby repealed, and any funds made available under said sections of said Act not expended or committed prior to the enactment of this Act are hereby returned to the Treasury: Provided, That any allocations made or committed, or priorities granted for the delivery, of any housing materials or facilities under any regulation or order issued under the authority contained in said Act, and before the date of enactment of this Act, with respect to veterans of World War II, their immediate families, and others, shall remain in full force and effect."

In urging this proposal, the complainant overlooks the fact that the 1946 Act was not repealed by the happening of either of the contingencies designated in Section 1 (b), but by the force and effect of Section 1(a) of the 1947 Act, wherein, with the exception of certain sections not here material, there is specific repeal. The claim is predicated upon the theory that Section 1(a) and the provisions of Section 5 were in effect saving clauses which extended the operation of the statute. This position is unsound, because Section 5 was expressly repealed by Section 1(a) of the 1947 Act. United States v. Carter et al., 5 Cir., 171 F. 2d 530. While it is true that "any allocation made or committed, or priorities granted for the delivery, of any housing materials or facilities" under the authority of

the 1946 Act were to remain in full force and effect possibly to aid completion of construction already commenced under that Act, the statute is silent as to any re-enactment barring sale beyond the ceiling price. The complainant cites in support of its position certain cases which hold (a) that a sale consummated subsequent to the repeal of the 1946 Act can be treated as a violation and ground for restitution if the agreement to sell antedated repeal, and (b) that an agreement to build would similarly permit an injunctive order. Pruitt v. Litman, D.C.E.D.Pa. 1949, 89 F.Supp. 705; Katz v. Litman et al., D.C.E.D.Pa. 1949, 89 F.Supp. 706; United States v. Tyler Corporation, D.C.E.D.Va. 1949, 90 F.Supp. 395. No case has been brought to the attention of the court, however, where the facts are comparable to the instant case, and in the citations offered the reasoning is not clear as to the basis for the conclusions reached. It would appear that the above holdings are grounded upon the rather doubtful premise that liability arose because a contractual relation was created (1) between the Government and the builder in the granting of the application for priorities, or (2) in the agreement of sale made by and between the builder and the purchaser prior to repeal. I cannot adopt the proposal that an enforceable contractual relationship was created by the granting of the application by the Government. The language of the statute negates the idea that a contractual basis was intended or could be formulated; its whole purpose was remedial and regulatory, and a departure from the regulations would permit the invocation of sanctions or penalties, either civil or criminal. It was plainly a restriction of the private rights of the individual, to be relaxed by grants, here represented in the priorities. Respecting the second proposal that a surviving liability could be construed under an agreement of sale made by and between the builder and the purchaser prior to repeal, no liability could possibly survive, for the contract, if such it was, would be illegal, unenforceable, and devoid of liability. Nor can I subscribe to the application of the fiction of relating back a sale which occurred subsequent to

repeal to an agreement reached prior thereto in order to constitute a violation. Upon either of these grounds the theory of contractual relation must be rejected and with it disappears any surviving liability which could be comprehended within Section 109 of Title 1 U.S.C.A. to form a basis for prosecution subsequent to repeal. Title 1 U.S.C.A. § 109 provides that in the repeal of any statute such shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing Act shall so expressly provide, and the statute is to be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. Nothing in the 1947 Act undertakes to release or extinguish the foregoing, and the rule would be available to the complainant if there were any sound basis for it, but none is here presented.

It is my view that the sale itself is the violation contemplated by the statute; if it occurred prior to repeal, it could be prosecuted before or after repeal; if it occurred subsequent to repeal, it cannot be held to be a violation. Here clearly the facts necessary to constitute a violation occurred after repeal. No proviso is contained in the Act of 1947 to maintain ceilings on the sale price of dwellings, and the failure to so provide might well have been that Congress deemed the situation did not require further supervision. Whatever powers were vested in Priorities Regulation 33 of the Second War Powers Act, under which it was promulgated and later adopted and continued in effect under the Veterans' Emergency Housing Act, would appear to have been abrogated. The Second War Powers Act was repealed by the First Decontrol Act of 1947, 80th Congress, 1st Session, Public Law 29, Approved March 31, 1947, and effective June 30, 1947, 50 U.S.C.A.Appendix, § 633 note. The Housing and Rent Act of 1947 carries the same effective repeal date.

Accordingly, there must be judgment for the defendants, and an order to that effect will be entered.